UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUIDIVILLE BAND OF POMO INDIANS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>NGV GAMING LTD., a Florida partnership,<br><br>　　　　　Defendant.<br><br>―――――――――――――――――――<br>NGV GAMING, LTD., a Florida partnership,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>UPSTREAM POINT MOLATE, LLC, a California limited liability company and HARRAH'S OPERATING COMPANY, INC., a Delaware corporation,<br><br>　　　　　Defendants. | No. C 04-3955-SC<br>No. C 05-1605-SC<br><br>ORDER GRANTING PLAINTIFF GUIDIVILLE BAND OF POMO INDIANS' MOTION FOR DECLARATORY RELIEF<br><br>AND<br><br>ORDER DENYING PLAINTIFF NGV GAMING, LTD.'S MOTION FOR SUMMARY JUDGMENT<br><br>AND<br><br>ORDER DISMISSING CASE NO. C 04-3955-SC, NGV GAMING, LTD. v. UPSTREAM POINT MOLATE, LLC and HARRAH'S OPERATING COMPANY |

**I.  INTRODUCTION**

　　　Plaintiff NGV Gaming, Ltd. ("NGV") filed this action, Case No. 04-3955, against rival casino development groups Upstream Point Molate, LLC and Harrah's Operating Company, Inc. ("Defendants") alleging that Defendants tortiously interfered with

NGV's contract with the Guidiville Band of Pomo Indians ("the Tribe").

The Tribe filed Case No. 05-01605 seeking declaratory and injunctive relief against NGV on the grounds that the underlying contracts are invalid. The two cases were consolidated.

The Tribe now moves for declaratory relief. Specifically, the Tribe asks the Court to issue an order declaring the Agreements to be invalid. NGV now moves for summary judgment.[1]

For the reasons set forth below, the Court hereby GRANTS the Tribe's motion for declaratory relief and DENIES NGV's motion for summary judgment and DISMISSES Case No. 04-3955.

## II. **LEGAL STANDARD**

The burden of proving the requirements for declaratory relief - i.e., the existence of a dispute on a matter within federal court subject matter jurisdiction - rests on the party seeking declaratory relief. State of Texas v. West Publishing Co., 882 F.2d 171, 175 (5th Cir. 1989).

The burden of proof as to the substantive right involved rests on whichever party holds the coercive claim - the true plaintiff. See Sanchez-Martinez v. I.N.S., 714 F.2d 72 (9th Cir. 1983).

//

---

[1] The Court has reviewed the surreply filed by NGV. The Court finds that NGV has submitted evidence concerning issues of fact. Because the Court bases its decision on an issue of law, it finds it unnecessary to address the contentions contained in the surreply.

### III. BACKGROUND

On July 3, 2002, the Guidiville Band of Pomo Indians entered into a series of contracts (the "Transaction Agreements" or the "Agreements") with F.E.G.V. Corporation to develop and construct a proposed gaming facility on restored trust land in Northern California. Plaintiff NGV's Memorandum in Support of Opposition to Motion for Summary Judgment at 3 ("Pl. NGV's Mem."). NGV is the assignee of these contracts. Id. The Transaction Agreements consist of the Development Agreement and Personal Property Lease ("Lease") and a Cash Management Agreement ("CMA"). Id. NGV was obligated under the Transaction Agreements to assist the Tribe in identifying and purchasing land in order to establish the trust land base on which the gaming facility would eventually be built. Id.

In January of 2004, Defendants began negotiating to purchase 354 acres of land from an outside entity for the purpose of building a gaming facility. Id. at 4. According to NGV, Defendants were aware of the existing contracts between NGV and the Tribe, yet intended to put these lands into trust for the Tribe and build a gaming facility for the Tribe to operate. Id. at 4-5.

On August 2, 2004, the Tribe sent a letter to NGV in which it attempted to "rescind" the Transaction Agreements with NGV. Id. at 6. NGV maintains that the reasons given for the rescission were "entirely pretextual" and that the Tribe was induced to terminate its agreements with NGV as a result of Defendants' interference. Id. at 6.

1   After termination of the contract, NGV filed its case, No.
2   04-3955, against Defendants, alleging tortious interference with a
3   valid contract.  Defendants filed a motion to dismiss NGV's
4   complaint on the grounds that NGV failed to state a claim upon
5   which relief can be granted.  The Court denied this motion and
6   granted the Tribe's motion to participate as an amicus curiae.

7   The Tribe filed Case No. 05-1605, seeking declaratory and
8   injunctive relief.  Defendants filed a motion for summary judgment
9   in Case No. 04-3955.

**IV.  DISCUSSION**

Under the standard cited above, the Court finds that the Tribe, as the declaratory relief plaintiff, has established the existence of a dispute on a matter within federal court subject matter jurisdiction.

The Court further finds, under the above-stated standard, that NGV is the true plaintiff because it is trying to establish that the contracts are valid, therefore it possesses the "coercive" claim.  Therefore, the Court's order will address NGV's contentions.

NGV contends that the Agreements are valid because 25 U.S.C. § 81 does not apply to the Agreements and the Agreements do not implicate or otherwise encumber Indian trust lands.  Pl. NGV's Mem. at 9-10.

Under California law, the elements of a cause of action for intentional interference with contract are 1) a valid contract between plaintiff and a third party; 2) defendants' knowledge of

4

the contract; 3) defendants' intentional acts designed to induce a breach or disruption of the contractual relationship; 4) actual breach or disruption of the contractual relationship; and 5) resulting damage. See Tuchsher Development Enterprises Inc. v. San Diego Unified Port District, 106 Cal.App.4th 1219 (2003).

### A. Validity of the Transaction Agreements Under 25 U.S.C. § 81

NGV contends that because no lands were acquired and transferred into trust, it is not necessary to obtain regulatory approval of the Agreements by the Secretary of the Interior, or his designee, pursuant to 25 U.S.C. § 81(b)(2000). Pl. NGV's Mem. at 9-10.

That section of the statute provides:

> No agreement or contract with an Indian tribe that encumbers Indian lands for a period of 7 or more years shall be valid unless that agreement or contract bears the approval of the Secretary of the Interior or a designee of the Secretary.

25 U.S.C. § 81(b). Regulations governing this section declare that a "contract or agreement that requires Secretarial approval under this part is not valid until the Secretary approves it." 25 C.F.R. § 84.007.

Apart from the fact that the land had not been acquired and converted into Indian trust land, the Agreement appears to fall squarely under the scope of Section 81. No one disputes that the to-be-acquired lands were to be converted into Indian trust lands. No one disputes that the term was in excess of seven years.

NGV does not concede, however, that the unacquired lands

5

would have been "encumbered" under Section 81. Pl. NGV's Mem. at 10. The Court, however, finds that the Agreements do encumber Indian trust lands within the meaning of the statute and the appropriate regulations. Under 25 C.F.R. § 84.002, "encumber" means to "attach a claim, lien, right of entry or liability to real property." The Agreements declare that the Tribe, so long as base rent for the gaming facility is payable[2], will not "[s]ell, dispose of, lease, assign, sublet, transfer, mortgage or encumber (whether voluntarily or by operation of law) all or any part of its right or interest in or to the Trust Lands" without the prior written consent of NGV. Declaration of Amy Wilkins ("Wilkins's Dec."), Ex. B at 26. Also, the Agreements grant NGV, its agents, employees, and independent contractors a right of entry, providing them with "complete and unrestricted access to the Indian trust lands for purposes of developing, installing and constructing the Structure."[3] Id. at 9.

NGV hangs its case on the fact that the lands had not yet been acquired, therefore rendering Secretarial approval unnecessary to a finding that a valid contract existed. Pl. NGV's Mem. at 12. The Court does not find this contention convincing. Rather, the Court finds that Secretarial approval is a bar to the

---

[2] That is, after the unacquired lands have been acquired, transferred into trust status, and the gaming facility has been built.

[3] The Master Definitions List attached to the Agreements defines "Structure" as the "buildings and improvements constructed and installed on the Trust Lands on which the Tribe operates the Facility." Wilkins's Dec., Ex. D at 3. "Facility" is defined as the "Structure, equipped and ready for the Tribe to conduct Gaming for the public." Id. at 6.

formation of a valid contract or agreement.  See A.K. Management Company v. The San Manuel Bank of Mission Indians, 789 F.2d. 785, 789 (9th Cir. 1986).  Therefore, the Agreements are invalid as a matter of law.

Ninth Circuit case law is clear on this issue.  The Court of Appeals wrote:

> [I]t is doubtful that general contract principals apply to an agreement subject to 25 U.S.C. § 81 (1982).  Section 81 explicitly provides that a contract is "null and void" without written approval from the BIA [Bureau of Indian Affairs].  Therefore it is logical to conclude that an agreement without BIA approval must be null and void in its entirety.  No part of it may be enforced or relied upon unless and until BIA approval is given.  BIA approval is an absolute prerequisite to the enforceability of the contract.  To give piecemeal effect to a contract...would hobble the statute.

Id.  Though this decision concerned Section 81 before it was amended in 2000 and dealt with a dispute over lands then held in trust for an Indian tribe, the Court's interpretation of congressional intent is clear:  contracts that encumber Indian trust lands in excess of seven years are invalid unless and until BIA approval is given.[4]  To enforce the Agreements piecemeal, as NGV urges the Court to do, would hobble the statute and go against

---

[4] Before 2000, § 81 declared that contracts "relating" to Indian trust land were "null and void" without BIA approval.  25 U.S.C. § 81 (1982).  One reason Congress amended the statute is that parties disputed - and heavily litigated - the meaning of "relating to Indian lands" for many years.  The Senate report on the 2000 amended version of Section 81 stated that Section 81 "will only apply to those transactions where the contract between the tribe and a third party could allow that party to exercise exclusive or nearly exclusive proprietary control over Indian lands."  See Catskill Development, L.L.C., v. Park Place Entertainment Corporation, 144 F.Supp.2d 215, 223 (S.D.N.Y. 2001).

7

the protective intentions of Congress.

The federal government's longstanding policy of regulating Indian land transactions supports this reading of the applicability of the statute.[5] The United States Supreme Court has stated that federal statutes relating to Indian tribes must be "construed liberally in favor of the Indians." <u>Montana v. Blackfeet Tribe of Indians</u>, 471 U.S. 759, 766 (1985). Furthermore, Section 81 notifies all parties that any contract encumbering trust lands for seven years or more is invalid without BIA approval. The Agreement, by its own terms, recognizes the need to satisfy this requirement. Wilkins's Dec., Ex. B at 16.

Accordingly, the Court finds that the Agreements are invalid as a matter of law. Because the Agreements are invalid, NGV's claim for tortious interference with a valid contract cannot stand.

## V.   CONCLUSIONS FOR CASE NO. C-04-3955 AND CASE NO. C-05-1605

For the foregoing reasons, the Tribe's motion for declaratory relief in Case No. C-05-1605 is GRANTED. Because the granting of the Tribe's motion decides the central issue on which NGV's motion and case are based, NGV's motion for summary judgment is DENIED, and its case, C-04-3955, is hereby DISMISSED.

//

//

---

[5] A contract forming the base for a claim of tortious interference should not be "opposed to public policy, so that the law will not aid in upholding it." W. Page Keeton et al., <u>Prosser and Keaton on Torts</u> Section 129 at 995 (5th ed. 1984).

8

IT IS SO ORDERED.

Dated: October 19, 2005

_____
UNITED STATES DISTRICT JUDGE