UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NGV GAMING, LTD.,<br><br>        Plaintiff(s),<br><br>    v.<br><br>UPSTREAM POINT MOLATE, LLC,<br>a California limited liability company, and<br>HARRAH'S OPERATING COMPANY,<br>INC., a Delaware corporation,<br><br>        Defendant(s).<br>_____/<br>GUIDIVILLE BAND OF POMO INDIANS,<br><br>        Plaintiff(s),<br><br>    v.<br><br>NGV GAMING, LTD., a Florida partnership,<br><br>        Defendant.<br>_____/ | No. C-04-3955 SC (JCS)<br>Consolidated Case No. C-05-1605 SC<br><br>**ORDER RE MOTION TO QUASH SUBPOENA**<br>**[Docket No. 313]** |

## I. INTRODUCTION

The Guidiville Band of Pomo Indians and Guidiville Band of Pomo Indian Gaming Agency (hereafter "the Band" and "the Agency" respectively and collectively referred to as "the Tribe"), by special appearance, have filed a motion to quash subpoenas issued on behalf of NGV in this action. The Tribe argues that: 1) the subpoenas issued by Plaintiff to the Band and Agency are ineffective on sovereign immunity grounds; and 2) the Band and Agency were not properly served. In addition, the Tribe argues that the attorney billing records that the Court ordered Defendants to produce are privileged and should not be compelled from Defendants. In the alternative, the Tribe seeks clarification from the

1  Court that Defendants' production of those records does not constitute a waiver of the attorney-client
2  privilege.
3        In opposition, Plaintiff NGV argues that the documents are highly relevant and that the Tribe
4  has waived its sovereign immunity arguments when it "permitted Harrah's to file the Spinelli Report
5  in this case, in its entirety and without redactions." Opp. at 3.  NGV argues that it requires the
6  additional documents (which are in the possession of the Agency) in order to impeach the conclusions
7  of the Spinelli report.  NGV also maintains that service of process upon an administrative assistant at
8  the Tribe's administrative offices was sufficient.
9        Oral argument was held on the motion on November 13, 2009.  For the reasons stated below,
10 the Band and Agency's motion is GRANTED.

11 **II.   BACKGROUND**

12       The Band of Guidiville Pomo Indians is a federally-recognized Indian tribe.  The Agency is an
13 arm of the Band, "organized pursuant to the Ordinance Establishing the Guidiville Band of Pomo
14 Indian's Gaming Agency, adopted and approved by the Band's Tribal Council.  Pursuant to the Band's
15 Constitution, all waivers of the Band's sovereign immunity must be approved by the Tribal Council."
16 Motion at 2.  The Band and Agency were purportedly each served with a subpoena on September 22,
17 2009. The subpoenas sought documents for use in the case, *NGV Gaming, Ltd. v. Harrah's Operating*
18 *Company, Inc.*, C-04-3955 SC.  The Band and Agency are not parties to that litigation.

19       Service of process was effectuated on both the Band and the Agency when a process server left
20 both subpoenas on an administrative assistant's desk at the tribal offices in Ukiah, California.
21 Declaration of Cheryl Williams, Ex. A (hereafter "Williams Decl.").  The assistant, Lisa Linder, states
22 that she informed the process server that she could not accept service of the subpoenas and provided the
23 process server with attorney information for the Agency.  *See* Declaration of Lisa Linder ("Linder
24 Decl."), ¶¶ 3-9.

25       The subpoenas duces tecum contains twenty two separate document requests and seek
26 information, *inter alia*, regarding the Spinelli report, communications and documents regarding
27 licensure of NGV, as well as communications with Lewis & Roca regarding licensure of NGV, the
28 Spinelli Report and the underlying investigation of NGV.  *See* Williams Decl., Exhibit A.  The requests
   are broad, and include requests that seek documents that appear not to be related to the Spinelli report.

*See e.g.*, Williams Decl., Exh. A, part 3, No. 14 ("All documents evidencing payments, gifts, loans or compensation by Harrah's to the Tribe or the Gaming Agency from April 1, 2004 through the present."). In its opposition, NGV withdraws requests Nos. 1-3, 8, 16, 18 and 20.

**III.    ANALYSIS**

    **A.    Service of Process**

According to the Tribe, service of the subpoenas in this case was defective. In support of its argument, the Tribe has submitted the declaration of administrative assistant Lisa Linder who states that she: 1) is not a proper person to receive service of process on behalf of the Tribe; and 2) informed the process server of this fact at the time of the attempted service. Despite this information, the process server nevertheless "threw the papers on [her] desk and said 'here'" and left. Linder Decl., ¶ 6. According to the Tribe, this attempted personal service was defective. The Court agrees.

NGV asserts that service on a corporation under California law requires only that a copy of the papers be left at the usual place of business with a person in charge and mailing the documents to the same address. Cal. Code Civ. P. § 415.20(a). NGV argues that it left the subpoenas with an "agent of the Tribe" (Lisa Linder, the administrative assistant) and mailed copies of the same to the Tribe and Gaming Agency at the same address. Opp. at 18, citing Declaration of Stephen J. Calvacca, Exh. 2, (return of process).

Under Federal Rule of Civil Procedure 4(h) and 45(b), a subpoena directed to a corporation or unincorporated association may be served by delivering a copy to an officer, managing agent, general agent, or any other agent authorized by appointment or by law, and mailing a copy to the defendant. Fed R. Civ. P. 4(h)(1)(B). Alternatively, Rule 4(h)(1)(A), through Rule 4(e)(1), authorizes service on individuals in any manner approved under state law, including those individuals who may be served on behalf of corporations and unincorporated associations.

Under California Code of Civil Procedure § 416.10, service on a corporation may be made by delivering a copy to "the designated agent for service of process," or to "the president or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a general manager, or a person authorized by the corporation to receive service of process." Cal. Code of Civ. P. § 416.10. Similarly, an unincorporated association may be served by service on "the president or other head of the association, a vice president, a secretary or assistant secretary, a treasurer or

assistant treasurer, a general manger, or a person authorized by the association to receive service of process; . . ." Cal. Code of Civ. P. § 416.40. Without evidence to support its contention, NGV argues that its process server delivered the subpoena to "the designated agent for service of process" and that therefore service was proper under Rule 4(h)(1)(B) and § 416.10.

NGV is incorrect. In the Ninth Circuit, "service on an individual who holds a position that indicates authority within the organization generally is sufficient." *Id.*, citing *Direct Mail Specialists v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). The determination of whether an individual holds sufficient authority within a corporation is a factual question. *Id.* In *Direct Mail,* the receptionist was the only employee in the office when the process server arrived to perform service. *Id.* The process server asked for the name of the person authorized to accept service and was told that no one was available. *Id.* The process server left the documents with the receptionist, specifically instructing her to give them to her superiors. *Id.* After that attempted substitute service, the process server mailed the documents to the company. *Id.* After reviewing the individual facts of the case, the court found that the receptionist played a large role in the structure of the company (a small company) and was someone who had more than minimal responsibility at the company. *Id*. at 688-89. In addition, the court noted that the service by mail had been effective, *i.e.*, the head of the company complained about the service a day later. *Id. See also Gregory Bender v. Nat'l Semiconductor Corp.*, WL 2912522 at *2 (N.D. Cal., Sept. 9, 2009) (if service cannot be made to an officer, managing agent or other agent authorized to receive service of process, it may be made upon a "representative so integrated with the organization that he will know what to do with the papers.") (internal citations and quotations omitted). On the other hand, Judge White concluded in *Gregory Bender v. Nat'l Semiconductor Inc., supra*, that the facts did not suggest that the receptionist played a large role in the overall structure of the company. *Id.* The court also found that the facts were unclear regarding whether the process server explained to the receptionist what the papers were for. *Id.*

Here, there is no evidence that Lisa Linder is a person with sufficient authority to accept personal service on behalf of the Band or Agency. As the process server was informed on the day of the purported service, administrative assistant Linder is not a designated agent for service, nor is there any evidence in the record before the Court that she was a person of sufficient authority within the tribe to accept service. Linder Decl., ¶ 3-9. Further, the process server did not explain what the papers were

for. She simply said "these papers are for Black Oak Gaming." Linder Decl., ¶ 3. Looking at the totality of the facts in this case, and comparing them to *Direct Mail* and *National Semiconductor, supra*, the Court concludes that personal service under § 416.10 and Rule 4(h)(1)(B) was defective.

Alternatively, NGV argues that it effectuated substitute service under California Code of Civil Procedure § 415.20 and Rule 4(h)(1)(A). § 415.20 provides that "in lieu of personal delivery . . . to the person to be served as specified in Section 416.10. . . [and] 416.40" service may be accomplished:

> . . . by leaving a copy of the summons and of the complaint during usual office hours in his office *with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served at the place where a copy of the summons and of the complaint were left*. Service of a summons in this manner is deemed complete on the 10th day after such mailing.

Cal. Code of Civ. P. § 415.20(a) (emphasis supplied).

Under California law, the question of whether proper service on a corporation has been was effected turns on the specific facts of each case. *See Khouris, Crew & Jaeger v. Sabek, Inc.*, 220 Cal. App.3d 1009 (1990) (leaving copy of documents during usual office hours with a person who is apparently in charge and mailing a copy of the documents to the person to be served demonstrates good faith attempt at physical service plus actual notification of the action by mail under § 415.20). California courts construe statutes governing substitute service "'liberally . . . to effectuate service and uphold jurisdiction if actual notice has been received by the defendant.'" *Ellard v. Conway*, 94 Cal. App. 4th 540, 544 (2001) (quoting *Bein v. Brechtel-Jochim Group, Inc.*, 6 Cal. App. 4th 1387, 1392 (1992))

In the present case, the Court concludes that NGV did not satisfy the "in charge" requirement for effective substitute service under § 415.20. Leaving papers on the desk of a receptionist without any information that the receptionist would know what to do with the papers, is insufficient. Moreover, in this case, the receptionist specifically informed the process server that she was not authorized to accept service, that the process server was at the wrong location, and provided the process server with the contact information for an attorney. Linder Decl., ¶¶ 3-9. This is not a case, such as *Direct Mail*, where there is evidence that the receptionist was in fact, an employee with far greater responsibility than that typically associated with receptionists. Nor is it a case where the employee appears to have simply been avoiding service. She provided information to the process server (who claimed that she had papers for "Black Oak Gaming"); she did not merely close the door and refuse service. She informed the process

5

server that "this isn't the place to bring [the papers]; we don't have anything to do with Black Oak Gaming." Linder Decl., ¶ 3. She also provided the process server with the name and number for attorney Scott Cowell. *Id.* ¶5.

Finally, there is nothing in the record that would support a finding that the mailing was done according to law. Subsection (a) provides that after leaving a copy with a "person apparently in charge" (which was not done here), the party must mail a copy "to the person to be served" at the address where the papers were left. There is no evidence in the record that the subpoena was mailed to an officer or agent for the Tribe as required by statute.

The Court finds that NGV's attempted service fails to meet the standards for personal service and alternatively, for substitute service. Accordingly, the attempted service is hereby QUASHED.

### B.     Sovereign Immunity[1]

The Tribe argues that it is not subject to the service of the subpoenas (even assuming for the sake of argument that they were properly served) due to sovereign immunity. The Tribe contends that it has not waived its sovereign immunity based upon the limited waiver that was granted by the Tribal Council in July 2009 in order to order to allow the deposition of the President of the Agency, Mr. Terry Springer, and the production of certain documents. The Tribe argues that any waiver of sovereign immunity must be narrowly construed and no express waiver sufficient to include a broad subpoena for documents occurred here. The Court disagrees.

It is well-settled that Indian tribes are immune from suit in both state and federal court unless "Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 754 (1998). "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers," such as the United States. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978); *Bishop Paiute Tribe v. County of Inyo*, 275 F.3d 893 at 904, n. 3 (9th Cir. 2002) (vacated on other grounds by 538 U.S. 701 (2003)) (noting that "comparison to cases denying enforcement of state court subpoenas against the United States government is . . . appropriate").

---

[1] Although the Court grants the instant motion based on inadequate service, the Court also addresses the Tribe's claim of sovereign immunity as an alternative basis for this decision.

6

This immunity has also been found to protect tribes and their officers from legal process such as a subpoena or a search warrant. *United States v. James,* 980 F.2d 1314 (9th Cir. 1992) (holding that tribe's Department of Social and Health Services was immune from obligation to respond to defense subpoena seeking records regarding victim's alcohol and drug problems in rape case); *Bishop Paiute Tribe, supra*, 275 F.3d at 904 (reaffirming the *James* holding and finding that tribe's sovereign immunity barred county's execution of warrant to search tribal employee records on reservation as part of a welfare fraud investigation). Moreover, waiver of sovereign immunity by a tribe cannot be implied; it must be unequivocally expressed. *Santa Clara Pueblo v. Martinez,* 436 U.S. at 58.

In support of its argument that NGV's subpoena should be quashed, the Tribe relies principally on the Ninth Circuit's decision in *United States v. James, supra*. There, describing it as a "matter of first impression in this Circuit," the Ninth Circuit rejected the argument that waiver of tribal immunity may be implicit. *Id.* at 1319. The court noted that situations in which courts have found waiver of sovereign immunity are those in which the tribe was a party to the lawsuit. *Id.* at 1320. In *James*, the tribe had voluntarily produced documents from one agency, the Housing Authority, and then received a subpoena directed toward a different agency, the Department of Social and Health Services, requesting additional documents from the tribe. *Id.* The court held that one tribal agency does not waive sovereign immunity from a subpoena based upon another tribal agency's voluntary production of documents. *Id*. at 1320

The court noted that once sovereign immunity is waived, however, the tribe may properly be required to produce other documents that the court finds to be with the scope of the waiver – even if the tribe would like to limit the waiver to the documents first produced: "The [tribe] cannot selectively provide documents and then hide behind a claim of sovereign immunity when the defense requests different documents from the same agency." *Id.* at 1320. To determine the scope of the waiver, the court looked not just at the waiver as asserted by the tribe, but at the types of documents produced. The court concluded that one agency's decision to release documents did not indicate any intent to waive immunity with respect to the documents of another tribal agency. *Id.* The court reasoned that the tribe's Department of Social and Health Services had a greater privacy interest in the documents they sought to protect than the Housing Authority had in the documents that it produced. *Id.* The court quashed the subpoena seeking records regarding a victim's alcohol and drug use, and found no waiver by the tribe's previous act of producing documents from a different agency. *Id.*

7

NGV quotes this language from *James*, arguing that the case stands for a broader proposition: "The issue of whether the Tribe has waived sovereign immunity, at least to the extent necessary to provide NGV with access to other relevant documents, has been resolved in this circuit in *United States v. James*. . . ." Opp. at 13. NGV argues that the court in *James* held that if an agency has voluntarily provided documents in the litigation, then **all relevant** documents from that agency must later be provided based upon the tribe's waiver of sovereign immunity. The Tribe disagrees and argues that NGV misstates the holding of *James,* urging this Court not to follow this explicit language in *James*.

The Court has found no authority – Ninth Circuit, Supreme Court or otherwise – that clearly circumscribes the waiver of sovereign immunity in this context, *i.e.*, where there has been a broad express waiver as to the information possessed by a tribal official, the production of limited documents by the Tribe, and a later attempt to prevent additional, related documents from being produced. The Court in *James*, however, did provide guidance on the considerations to be applied to determine the scope of the waiver. Having produced certain documents and agreed to produce other information (a deposition on all topics related to the instant case), the Court should determine whether the waiver extends to other documents by considering the information voluntarily produced and by whom, and the nature of the additional documents sought by the subpoena.

Here, the express waiver is broad. The Tribe allowed production of the Spinelli report, and correspondence between NGV and the Agency. In addition, it will allow the head of the Agency to sit for a deposition in this case without any express subject matter limitation. Williams Decl. Exh. C.[2]

Despite this broad waiver, only some of the documents sought by the subpoenas are sufficiently similar to the documents and other information voluntarily produced (or to be produced) to come within the scope of the waiver. As the Ninth Circuit stated, once there is an express waiver by the Tribe and production of documents, the protections of sovereign immunity have been curtailed and the tribe may

---

[2]The Tribe points to the paragraph of the Tribal Council Resolution that states, "if this waiver is to be interpreted by the subject Court as to be broader than the limited circumstances set forth herein, such limited waiver is thereby revoked in its entirety." Williams Decl. Exh C. The Tribe argues that if the Court requires production of documents other than those specifically identified in the Resolution, the waiver is revoked. Motion at 8 n. 4. This argument proves too much. The Circuit stated that a tribe could not withhold additional documents sought from the same agency that had previously produced documents voluntarily. This rule would have no effect if a tribe could avoid its operation simply by producing the documents it wanted to produce, and then revoking its waiver of sovereign immunity.

1 not "selectively" refuse to produce documents from the same agency. On the other hand, documents, 2 such as those held by a different tribal agency, in which the Tribe may have a different interest, may be 3 withheld.

4 Applying these considerations, the Court concludes that only those documents in the Agency's 5 possession that refer or relate to the Spinelli report should be produced under the express waiver by the 6 Tribe. Such documents are in the possession of the same agency that already produced documents, and 7 concern the same report that was produced by the Tribe. The Tribe cannot "selectively" refuse to 8 produce these documents, having already provided directly related documents from the same agency. 9 *See e.g., Thomas v. Hickman*, 2008 WL 782476 (.E.D. Cal. March 20, 2008) (relying in part on *James*, 10 upholding magistrate order finding waiver of sovereign immunity explaining "non-party sovereigns that 11 voluntarily make documents available to one party to an action waive their claim to immunity from a 12 federal subpoena by the opposition party seeking the same or related documents.").[3]

13 On the other hand, the other documents sought by the subpoena are not sufficiently related to 14 the information produced, and the Tribe may have different interests in these other documents. For 15 example, many of the documents sought appear to be in the possession of the Band rather than in the 16 possession of the Agency (which produced the other documents). They also seek documents that are 17 not related to the Spinelli report. *See, e.g.,* Williams Declaration at Exh. A, part 2, ¶ 14 (subpoena to 18 the Tribe seeking, *inter alia*, documents evidencing payments by Harrah's to the Tribe). Some of the 19 categories of documents sought even relate to other unnamed vendors of the Tribe, or to investigations 20 other than the Spinelli report. *See, id.*, at ¶ 15.

21 Accordingly, as an alternative ground, the motion is granted with respect to all documents sought 22 except those in the possession of the Agency which refer or relate to the Spinelli report. Of course, as 23 explained above, the Court is quashing both subpoenas in their entirety based on improper service. If

---

[3]The Tribe argues that this language in *James* (and cited in *Thomas*) contravenes Supreme Court authority and that this Court may ignore it. The Court disagrees. The Tribe has provided no authority, and the Court has found none, which stands for the proposition that a Tribe can waive immunity with respect to one subject matter and provide documents and testimony on that subject, and then later refuse to produce additional, relevant documents *from the same agency on that same topic*. Here, the same tribal agency that produced the Spinelli report is being called upon to produce additional relevant documents – the Agency. The discussion by the Ninth Circuit covers this situation, and absent any other controlling authority on this issue, the Court declines to accept the Tribe's invitation to ignore it.

9

after review an appellate court concludes that service was proper, only documents described in this paragraph should be produced.

### C.     Attorney-Client Privilege Issue

Finally, the Tribe seeks clarification from this Court regarding its previous order regarding the production of the Lewis & Roca bills in this case.  The Court resolved this issue previously when it ordered that any privileged information could be redacted and listed in a privilege log.  The Court has insufficient information in the record before it to conclude that there has been any waiver of the attorney client privilege or work product privilege.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS the Agency and Band's motion to quash the subpoena in this case.

IT IS SO ORDERED.

Dated:   November 24, 2009

JOSEPH C. SPERO
United States Magistrate Judge

10